Judge UNDERwoon,
delivered the opinion of the court.
David Hampton and John Reed, on the 30th March, 1789, executed their obligation to Daniel Ramey and Achilles Eubank, conditioned to make to them “a good and lawful right and deed in ^ee to four hundred acres of land, lying on both sides of the two mile creek, and bounded as follows, to-wit: beginning at a hoop-wood and two hickories, running north, &c. proceeding to describe the boundaries of the tract by corners, courses and distances upon the face of the obligation, as well as stating the quantity of acres to be conveyed. The courses and distances given, precisely include tour hundred acres and no more, but by are-survey, it has been ascertained that the distances between some of the courses called for in the obligation, are longer than the distances therein given, and that all the land in-cfoded by liner, running to the corners called for, will make four hundred and thirty-five acres. The important question litigated by the parties is, shall the heirs of ^aH5pt°n aHd Reed be compelled to convey in execu-Ron of the contract, the whole four hundred and thirty-five acres or four hundred acres? And if compelled t.o convey the whole, are they not entitled to compensation f°r tih° surplus thirty-five acres?
We are of opinion they are bound to convey the whole without compensation for the surplus. The land to be conveyed is specially described by its bou-dary. The corners called fob, must be regarded as known to the contracting parties, and all the land embraced by lines extending to those corners, must be conveyed to comply with the covenant fully. The . contract is to convey according to the boundary proscribed and given, and not to lay olf four hundred acres out of that boundary or any other, and convey that quantity when laid oiTto the obligees.
If, in construing the contract, we were to limit it to «the precise quantity of acres mentioned, we should be *635 compelled to disregard some one or more calls for corners. Which should be abandoned? Who shall select? There is no rule by which we can answer. It would depend upon unregulated discretion. The exercise of which, in this case, by curtailing the boundary, would change the contract of the parties, by disre--garding positive stipulations, to go to tangible, visible objects.- This cannot be done upon the ground, that the call for quantity upon the face of the obligation, is sufficient of itself to justify a disregard of the calls for corners. . If there was evidence of fraud or mistake in reducing the contract to writing, or if the surplus beyond the quantity, shown by the proof- to Have been intended by the parties to be conveyed, was erroneous; there might be ground for the chancellor to interpose. In this case, there is nothing like fraud or mistake alleged or proved in reducing the contract to writing in the terms set forth in the obligation, nor is the excess of thirty-five acres, above the quantity shown by the proof, to have been intended by the parlies, sufficient, under all the ciruumstances, to -justify a limitation or restriction of the conveyance to the precise quantity of four hundred acres. Indeed we are not prepared to admit, that the parties intended to be exact in their estimation of the quantity. At the date of the obiigation, a new admeas-urement of land in Kentucky was not of its present consequence.
In the case of Fisher vs. May’s heirs, II Bibb, 451' this court remarked, that twenty-two acres of surplus in the conveyance of four hundred acres in the year 1786, is believed no very unusual thing,” and in the case of Young vs. Craig, Ibid, 271, the court said “in sales made at an early period ot this country, great liberality of admeasurement was frequently allowed by the seller, and exercised by the purchaser. Where this was the case, to authorize a conclusion from the surplus contained in the boundaries of the tract, that there was a mistake of quantity, the surplus ought to be greater than was usual in conveyances made about the same period and with the same intention of allowing a liberal admeasurement.”
In the present case, a remote parol vendor to the obligees, being entitled to three hundred acres out of *636 a- tract of one thousand acres, agreed to receive four hundred acres off the most inferior end of the tract for his portion, the same having been laid off in his absence according to the boundary mentioned in the obligation by tbe procurement of the obligors. The surplus of thirty-five acres is produced by the distance between the original corners of the one thousand acres tract, being further apart than called for; Consequently, it if more than probable, that there is a surplus in the original tract. Bryan, the vendor, alluded to, was to have two hundred acres for surveying' the original tract. He afterwards purchased one hundred acres more, and these three hundred, which he was entitled to, according to quantity and quality, out of the whole tract, were paid in the four hundred' acres, as laid off by the obligors at the wcrstend of the tract. Taking the end line at four hundred poles as the base, and running into the one thousand acres tract one hundred and sixty poles, the quantity of four " hundred acres would be given.
Whera.thfere is a Eale in gross, obligors not responsible for deficiency, nor obligees for excess.. If the boundary be made good, that is all that is required.
The parties do not seem to have regarded the factt that the end line of the original survey, was thirty poles longer than called for. If it had been known to them at the time, it may have been intentionally regarded upon tiie ground, that there was a propriety in permitting Bryan and his vendees to share in the surplus of the-whole tract, because he had an interest before the original survey was made. But he that as it may, the obligation upon its face seems to us to have more respect to the abuttals mentioned, than to the quantity of acres, and hence, we look upon it as evidence of a sale in .gross, rather than a sale by the acre. The parties had agreed upon a certain boundary, that boundary seems to have been acquiesced in, for more than twenty years before this suit was instituted. It is too late now to disturb land marks so long recognized by the acts of the parties, as well as the positive stipulations of the contract. The case of Rogers vs. Garnett, IV Monroe, 269, contains principles applicable to this. If the boundary mentioned in the obligation did not contain four hundred acres under our view of the contract, the obligors would not be responsible for the deficiency. So long as they make good the boundary, more cannot be required of them; and therefore, they should *637 not be permitted to insist upon compensation for so small a surpluses that in question.
Whero d¡vis. ionofland has no influ-before3' court, error to decree oosts,
Allan and Simpson for plaintiffs; Hanson, for defendants.. _
There is however, a part of the decree of the circuit court which we do not approve. Ramey, one of the obligees, devised his interest in the land to several persons, Ramey and Eubank, having made partition. The surveyor laid down the portions of the several claimants, and the defendants were directed to convey the different lots to the several proprietors, and to pay all the costs. Now it was erroneous to charge the defendants with the costsof surveying, and laying down the several lots into which the land described in the obligation had been divided and sub-divided. These divisions had no influence in settling the merits of the controversy, and the defendants Had nothing to do with them, and therefore ought not to he charged with any expense in relation to them.
For this cause alone, the decree of the circuit court, in respect to the costs, is reversed and the cause remanded with directions to modify the decree for costs, in conformity to this opinion. We deem it useless to discuss the other question presented by the assignment of errors.
The plaintiffs in error must recover their costs.